IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 26, 2004

## MICHAEL DWAYNE CARTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 77242   Richard Baumgartner, Judge**

_____

**No. E2004-00502-CCA-R3-PC - Filed January 24, 2005**

_____

The petitioner, Michael Dwayne Carter, pled guilty in May of 2002 to two counts of forgery, one count of felony theft, two counts of misdemeanor theft, one count of misdemeanor evading arrest and one count of burglary of a vehicle in exchange for an effective sentence of six years and acceptance into a "Drug Court" program. The trial court set a sentencing date. Prior to sentencing, the petitioner was charged with several other offenses. In October of 2002, the petitioner appeared for sentencing on the previous guilty pleas and entered guilty pleas on four additional counts of forgery. By agreement, the petitioner's sentences on the subsequent offenses were considered with the prior offenses, resulting in an effective ten-year sentence for all of the charged offenses. The petitioner subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel. The trial court denied the petition. For the following reasons, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Michael Dwayne Carter.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

<u>Factual Background</u>

In May of 2002, the petitioner pled guilty to two counts of forgery, one count of felony theft, two counts of misdemeanor theft, one count of misdemeanor evading arrest, and one count of burglary of a vehicle, arising from several different incidents. The terms of the agreement resulted in three consecutive two-year sentences, for a total effective sentence of six years. The petitioner was permitted to apply for probation and was accepted into a "Drug Court" halfway house. As a result, the petitioner was released from custody upon acceptance of the plea. The trial court set a date for sentencing in July of 2002.

From the record, it appears that the petitioner stayed at the halfway house for a couple of weeks and then left the facility. When the petitioner did not appear at the sentencing hearing in July, the trial court issued a capias for his arrest. However, the petitioner had already been apprehended on an indictment and on an information charging him with four additional counts of forgery.

In October of 2002, the petitioner appeared before the trial court for sentencing on the previous guilty pleas and to enter guilty pleas on the four additional counts of forgery. The plea agreement specified that the sentences on the new forgery offenses were to be considered with the prior guilty pleas and that the petitioner would withdraw his application for probation.

At that time, the petitioner pled guilty to an indictment charging him with one count of forgery, a Class E felony, and on an information charging him with three counts of forgery, a Class E felony. The plea agreement specified that the sentence for the plea on the indictment would be two years and the sentence for the plea on the information would be two years on each count of forgery to run concurrently to each other. The petitioner agreed that the sentences on the new charges would run consecutive to each other and consecutive to the previously imposed six-year effective sentence, for a total effective sentence of ten years.

The trial court summarized the proceedings for the petitioner at the conclusion of the plea hearing as follows:

THE COURT: [Y]ou've got two cases here for disposition today, and you've had three prior cases, which you've already pled. Those are 74764, 73148, 74944. You got two-year sentences in each of those, consecutive, for a total effective sentence of six years in those three cases. You're withdrawing your application for probation in those, and you're going to serve those sentences.

And then the cases you have here, one of them is an indictment, one of them is an information. They both charge forgery. There's a single count in the

Indictment 74988, class E felony forgery with a one-to-two-year range of punishment. That's going to - you're going to get the maximum two-year sentence in that. And then in the Information 75840 there are three class E felony forgeries. You're going to get two-year sentences in each of those. Those three to run concurrently with each other but consecutive to the indicted case, and those are all consecutive to the other three cases for a total effective sentence of ten years to serve as a range I standard offender. Your total convictions, four of them today, plus the three before, mean you have seven total class E felony convictions on your record. Is that your understanding of the agreement?

PETITIONER: Yes, your Honor.

THE COURT: And you understand this is a sentence to serve, so I'm going to send you on to the Tennessee Department of Corrections. They'll determine when you're actually eligible for release. You understand that?

PETITIONER: Yes.

At the conclusion of the plea and sentencing hearing, the trial court addressed the petitioner along with several other defendants who were being sentenced at that same time. The following colloquy occurred:

THE COURT: Now, those of you who I'm going to sentence, if you don't like the way I tell you you've got to serve your sentence, you can appeal that because I've made that decision. What you can't appeal is your conviction, because you've agreed to that, or the number of years that you've agreed to take, because again, you've agreed to that. The only thing you could appeal is the decision that I make, not something you've agreed to. Everybody understand that?

(Defendants responded in the affirmative.)

THE COURT: Has anybody forced you or threatened you or pressured you in any way?

(Defendants responded in the negative.)

THE COURT: Have your lawyers explained all your options to you and explained their discussions with the District Attorney?

(Defendants responded in the affirmative.)

THE COURT: And you've thought this over, and this is a free, voluntary decision. Is that right?

(Defendants responded in the affirmative.)

THE COURT: Everybody satisfied with their lawyer?

(Defendants responded in the affirmative.)

THE COURT: Anything you don't understand; anything you want to ask me about?

(Defendants responded in the negative. )

The trial court accepted the petitioner's plea and sentenced him to an effective ten-year sentence in the Tennessee Department of Correction pursuant to the plea agreement.

In May of 2003, the petitioner filed a pro se "Petition for Relief from Conviction or Sentence." In the petition, he alleged that his "[c]onviction was based on [an] unlawfully induced guilty plea or guilty plea involuntarily entered without understanding the nature and consequences of the plea," that the conviction was "based on the use of coerced confession," and that he was denied the effective assistance of counsel.

Counsel was appointed to represent the petitioner in the post-conviction proceeding and an amended petition was filed alleging that the "legal basis for this claim is the denial of due process and effective assistance of counsel. Specifically, the petitioner alleged that:

> [T]rial counsel was ineffective in that trial counsel assured petitioner that petitioner would be placed in the Boot Camp program. Based upon counsel's representations, petitioner believed that he would be admitted to the Boot Camp program and reduce his actual time of incarceration. This understanding was a substantial factor in petitioner's decision to withdraw his pending application for probation and to accept the plea agreement in the new cases. Petitioner has not been admitted to the Boot Camp program.

The petitioner also raised a claim that his counsel failed to discuss the weaknesses in the State's evidence and "plausible counter-offers which may have resulted in a more favorable total effective sentence." He asserted that his counsel "appeared to be unwilling to aggressively seek a more favorable outcome."

### Post-Conviction Hearing

The trial court held a hearing on the post-conviction petition where the trial court heard testimony from the petitioner and trial counsel.

The petitioner testified that he took the offer because he "was told by counsel that the . . . DA, and the judge was [sic] going to recommend boot camp, that [I] would get boot camp. That is

-4-

why I took the 10 years without going to trial." The petitioner testified that he "had trust" in his attorney that he would get boot camp. He did not remember trial counsel explaining to him that there were other options or the possibility of going to trial. The petitioner also denied that trial counsel told him he was receiving the maximum sentence for the forgery charges. The petitioner admitted that he discovered after the acceptance of the plea that he was too old for boot camp, but that he would not have entered the plea if he knew he was too old for boot camp.

On cross-examination, the petitioner admitted that after the first plea hearing, he was released pending sentencing to live at the halfway house and attend a Drug Court program. He admitted that he left the halfway house after a few weeks, did not report for sentencing and did not report for a presentence investigation.

The petitioner also admitted that he should have said something to the judge about boot camp at the plea hearing. He admitted that the trial court asked if "anybody promised . . . [him] anything or coerced . . . [him]" and he responded "no." The petitioner also admitted that there was nothing on the guilty plea paperwork referencing boot camp.

Trial counsel for the petitioner testified that he discussed the possibility of boot camp with the petitioner at one time, but that he did not tell him it was part of the agreement. He testified that he told the petitioner he did not know if he was eligible for boot camp "because of . . . [his] age." Trial counsel did not remember discussing boot camp with the petitioner again. Trial counsel also stated that when boot camp is part of a plea agreement, he makes sure that boot camp is specifically referenced in the plea agreement.

At the conclusion of the hearing, the trial court denied the petition. The petitioner filed a timely notice of appeal.

## Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Further, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them.

<u>Analysis</u>

On appeal, the petitioner suggests that his attorney "led . . . [him] to mistakenly believe that boot camp was part of his agreement." He contends that he suffered prejudice in that "he would have rejected the plea offer and insisted on going to trial had he understood that he could not get into the boot camp program." The State counters that the post-conviction court "weighed and measured the credibility of the witnesses and accredited the testimony of . . . [trial counsel] over that of the petitioner" and that the petitioner failed to show that trial counsel's performance was deficient in any way.

The petitioner argues that he was denied effective assistance of counsel. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . .; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. Burns, 6 S.W.3d at 461. Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994).

On appeal, the petitioner complains that his trial counsel was ineffective because he failed to inform him that he would not get boot camp as a part of his plea agreement. He claims that trial counsel's assurances of boot camp were the only reason he agreed to accept the guilty plea.

The post-conviction court determined that:

[F]irst of all, I don't believe that you were promised boot camp.

Second of all, I don't believe that there was no discussion about the potential for a different resolution of the case or your right to go to trial, because I reviewed that right with you myself, and as pointed out by the prosecutor here today, you were

asked if there was anything else offered to you. You were asked if you had any questions. In each case you indicated that you did not have any questions and nothing else had been offered to you, and I believe if you thought that you were going to be able to go to boot camp that you would have raised that at this time.

I don't find that there's substance to your allegation that . . . [trial counsel] was ineffective, and second of all, you've offered no evidence that you were prejudiced in any way. The fact of the matter is you were looking at a longer sentence than you got, and you agreed to take the sentence that you did take.

So I don't find any merit to your claim of ineffective assistance of counsel, which, of course, you would have had to establish by clear and convincing evidence.

In order for the petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that trial counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland, 466 U.S. at 687, the petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. As stated previously, credibility determinations are entrusted to the trial court. Odom, 928 S.W.2d at 23. The post-conviction court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision, including the fact that trial counsel did not promise that the petitioner would receive boot camp in lieu of incarceration. Further, the petitioner has failed to establish that he suffered any prejudice as a result of trial counsel's representation. We conclude that the record does not preponderate against the post-conviction court's findings.

## Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JERRY L. SMITH, JUDGE